Filed 8/5/26 (see dissenting opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RACHEL LEVISS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ARIANA MADIX,<br><br>    Defendant and Appellant. | B340116<br><br>(Los Angeles County<br>Super. Ct. No. 24STCV05072) |

APPEAL from an order of the Superior Court of Los Angeles County.  Daniel M. Crowley, Judge.  Affirmed.

Nolan Heimann, Jordan Susman, Douglas E. Mirell, and Jane Davidson for Defendant and Appellant.

Liner Freedman Taitelman + Cooley, Bryan J. Freedman, Summer E. Benson, Jason H. Sunshine; Geragos & Geragos, Mark J. Geragos, and Kimberly M. Casper for Plaintiff and Respondent.

_____

## INTRODUCTION

This action arises out of the discovery of a private sexual affair, which garnered widespread media attention when news of the affair became public. Plaintiff and respondent Rachel Leviss had an affair with Tom Sandoval, the then-boyfriend of defendant and appellant Ariana Madix. At the time, Leviss, Madix, and Sandoval were all cast members on the reality television show, Vanderpump Rules. Madix learned of the affair when she found sexually explicit videos of Leviss on Sandoval's cell phone, which Madix then recorded and sent to Leviss. After the affair became public, Leviss filed suit against Madix for Madix's alleged conduct in accessing, copying, and disseminating the videos. Madix filed a special motion to strike under Code of Civil Procedure section 425.16,[1] which the trial court denied. We conclude Madix was not entitled to relief under section 425.16 because she failed to meet her burden of establishing that the claims alleged against her arose from constitutionally protected activity. We accordingly affirm the order denying the special motion to strike.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Leviss's lawsuit against Madix

Vanderpump Rules is a reality television show that revolves around the personal and professional lives of the staff at Lisa Vanderpump's restaurants in West Hollywood. It is produced by Evolution Media and broadcast by Bravo Media. Leviss was a cast member on the show from 2016 to 2023. Madix and Sandoval were also cast members on the show during this time, and they had been in a romantic relationship since 2014.

---

[1] Unless otherwise stated, all further undesignated statutory references are to the Code of Civil Procedure.

On February 29, 2024, Leviss filed a civil action against Sandoval and Madix.  As alleged in the complaint, Leviss and Sandoval began having a sexual affair in or about August 2022.  Although the affair was purportedly a secret, it was known to many cast members and suspected by others because Leviss and Sandoval were not particularly discrete.  On March 1, 2023, Sandoval was performing with his band at a restaurant and bar when his cell phone fell from his pocket.  An attendee retrieved Sandoval's phone and handed it to Madix.  Madix then searched the phone and found sexually explicit videos of Leviss, which had been secretly recorded by Sandoval without Leviss's knowledge or consent.  Madix sent two videos to Leviss's cell phone, along with a text message that stated "you are DEAD TO ME."  Madix also immediately informed production on Vanderpump Rules about what she had found.

According to the complaint, news of the affair broke on March 3, 2023, when TMZ first reported it.  The following day, other tabloid publications began reporting on how Madix learned of the affair by finding sexually explicit videos of Leviss, citing unnamed sources.  The affair and its aftermath, known as "Scandoval," were soon the subject of widespread media attention.  As further alleged in the complaint, the extensive press coverage of the affair "injected new life" into Vanderpump Rules, "causing its viewership to explode to unseen levels and making its cast members mega-celebrities."  However, "[d]ue to a narrative deliberately fomented by Bravo, Evolution, and the cast, Leviss became an object of public scorn and ridicule."  Leviss later checked herself into a mental health treatment facility where she remained for three months.

Leviss asserted three causes of action against Madix for "revenge porn" in violation of Civil Code section 1708.85, invasion of privacy, and intentional infliction of emotional distress. In pleading these causes of action, Leviss alleged that Sandoval recorded the sexually explicit videos without her knowledge or consent when she was in a private residence, and that Leviss had a reasonable expectation that her intimate communications with Sandoval would remain private. Leviss also alleged that Madix obtained these videos from Sandoval's cell phone without his authorization, and "distributed and disseminated them to others, including but not limited to Madix herself, Leviss, and other individuals whose identities are not currently known to Leviss." Leviss further alleged that Madix "displayed the videos or disclosed their contents to individuals who may not have received them directly, including but not limited to Bravo, Evolution, members of the Vanderpump Rules cast, and other individuals whose identities are not currently known to Leviss." Leviss alleged that she suffered emotional, financial, and reputational harm "as a result of Madix's distribution, dissemination, and publication of the illicit videos."

2. **Madix's special motion to strike**

In response to Leviss's complaint, Madix filed a special motion to strike under section 425.16. Madix argued the causes of action against her arose from constitutionally protected activity because her alleged conduct concerned an issue of public interest about an individual in the public eye. Madix further asserted that Leviss could not demonstrate a reasonable probability of prevailing on her claims because Madix accessed Sandoval's cell phone with a passcode that he previously shared

4

with her, and she did not distribute or disseminate the videos of Leviss to anyone other than Leviss.

In a supporting declaration, Madix asserted that, on the evening of March 1, 2023, she was handed Sandoval's cell phone by a mutual friend after it fell from Sandoval's pocket as he was performing with his band at a club. Because Madix and Sandoval had been in a committed relationship for over nine years, she knew many of his passcodes, including the one for his cell phone, and she had accessed his phone on other occasions with his knowledge and consent. On this occasion, Madix felt the need to check Sandoval's phone, and she went to the women's restroom for privacy. While in a locked stall, Madix accessed Sandoval's phone with his passcode, and found suspicious text messages between Sandoval and Leviss. Madix then opened the photo application, and found a video of a FaceTime call between Sandoval and Leviss in which Leviss was engaging in a sexual act. At that time, Madix considered Leviss to be a friend, and she did not know that Leviss and Sandoval were having an affair.

According to her declaration, upon viewing the FaceTime video, Madix hurriedly took out her own cell phone and made two recordings of it. She then went outside with Sandoval and confronted him about the affair. Around the same time, Madix sent the two video recordings that she had made to Leviss, along with a text message stating, " 'you're dead to me.' " Madix did not send, share, or show the video recordings to anyone else. While outside, a heated argument ensued between Madix and Sandoval during which he forcibly grabbed Madix's phone from her hands. As Madix chased after Sandoval, he deleted the video recordings of Leviss from Madix's phone, including from the "recently deleted" folder. After this incident, Madix began informing her

5

family and friends about Leviss's affair with Sandoval, including how Madix learned of the affair when she found the FaceTime video of Leviss on Sandoval's phone.

In addition to her own declaration, Madix supported her motion with a declaration from a digital forensic examiner whose firm conducted a forensic extraction and analysis of Madix's cell phone. According to the examiner, Madix's phone did not contain any nude photos or videos from March 1 to March 2, 2023. Madix also supported her motion with copies of various news articles, podcasts, and social media posts, which showed that the affair was covered by a number of media outlets, and that Leviss was in the public eye both before and after the news of the affair broke.

### 3. Leviss's opposition and Madix's reply

In her opposition to the special motion to strike, Leviss argued that her causes of action against Madix did not arise from protected activity, and even if they did, Leviss had a reasonable probability of prevailing on the merits of her claims. Leviss contended that Madix's conduct was illegal as a matter of law because it violated Penal Code section 502, which prohibits the unauthorized access and copying of data from a computer system or network, and Penal Code section 647, subdivision (j)(4), which prohibits the unauthorized distribution of private sexual images of another person. Leviss also claimed that Madix's conduct did not implicate a public issue because the affair was a private matter where Madix accessed and distributed the videos. Each of her causes of action, asserted by Leviss, arose "from [Madix's] theft and distribution of private and sexually explicit recordings."

In a supporting declaration, Leviss asserted that her sexual affair with Sandoval was not recorded as part of Vanderpump Rules and did not take place in the presence of any other person.

6

During the affair, Leviss and Sandoval communicated privately, and at times sexually, on FaceTime calls. Sandoval never asked for Leviss's permission to record the video calls, and she was not aware that he did so. When Leviss received the two videos from Madix, she realized that Sandoval had recorded their FaceTime calls without her knowledge and consent. The calls depicted in the videos took place in February 2023 while Leviss was in a private residence, and they were intimate communications reflecting a clandestine sexual affair. Leviss had an expectation of privacy in those calls with Sandoval, and she never intended for their contents or existence to become public.

Amongst her arguments in reply, Madix challenged Leviss's characterization of the complaint and challenged Leviss's assertion that the complaint's gravamen was the "theft" of private videos. Madix asserted the complaint's gravamen was that "Madix supposedly distributed the videos."

### 4. The trial court's ruling

On July 11, 2024, the trial court held a hearing on Madix's special motion to strike. The court pressed Madix's lawyer on what protected activity her motion targeted. Her lawyer responded: "The protected activity, she's being sued for the distribution of the video. That's what she's being sued for." After taking the matter under submission, the court denied the motion. The court concluded that the causes of action alleged against Madix, for theft and distribution of the video, did not arise from protected activity because Madix's alleged conduct was illegal as a matter of law under Penal Code section 502. The court found that Madix's declaration conclusively established that "she accessed Sandoval's phone surreptitiously and made a copy of the data from the phone—the FaceTime videos—without Sandoval's

authorization in the privacy of a women's bathroom stall."  The court further found that "none of [Leviss's] pleaded theories of liability against Madix arise from [Madix's] public comments regarding [Leviss's] and Sandoval's secret relationship," but instead "arise from private conduct that occurred between [Leviss], Sandoval, and Madix, despite [Leviss's] speculation that Sandoval and Madix may have disseminated the FaceTime recording to other unknown individuals."  Because the court concluded that Leviss's claims against Madix did not arise from protected activity, it did not consider whether Leviss had shown a reasonable probability of prevailing on the merits.

Madix filed a timely appeal from the order denying her special motion to strike.

## DISCUSSION

### 1.    Governing law

Section 425.16, often referred to as the anti-SLAPP statute,[2] provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (*Id*., subd. (b)(1).)  Section 425.16 must be "construed broadly" to effectuate its purpose, which is to encourage participation in

---

**2**      SLAPP is an acronym for a " ' "strategic lawsuit against public participation," ' " and special motions to strike brought under section 425.16 are commonly referred to as " '[a]nti-SLAPP motions.' "  (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1007, fn. 1 (*Bonni*).)

8

matters of public significance and to ensure such participation is not chilled through an abuse of the judicial process. (*Id.*, subd. (a).)

Resolution of a section 425.16 special motion to strike requires a two-step process. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral*, at pp. 384–385.) "If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni, supra,* 11 Cal.5th at p. 1009.)

A claim arises from protected activity within section 425.16 if the conduct of the defendant on which the claim is based was an act in furtherance of the defendant's right of petition or free speech. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062–1063 (*Park*); see *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) "[T]he focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' " (*Park*, at p. 1063.) At this first step, "[t]he defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni, supra*, 11 Cal.5th at p. 1009.) However, where "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320.)

Section 425.16 describes four categories of protected speech or petitioning activity:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (*Id*., subd. (e).)

We review the trial court's ruling on a special motion to strike de novo, conducting an independent review of the entire record.  (*Park*, *supra*, 2 Cal.5th at p. 1067.)  "In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based.  [Citation.]  We do not, however, weigh the evidence, but accept the plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law."  (*Ibid*.)

2.   **Madix failed to meet her burden of establishing that Leviss's claims arose from protected activity**

In her special motion to strike Leviss's complaint, Madix contended that each cause of action alleged against her arose from protected activity "in connection with a public issue or an issue of public interest" under section 425.16, subdivision (e)(4). In denying the motion, the trial court ruled that Madix failed to satisfy this first prong of the section 425.16 analysis because (1) Madix's alleged conduct "was illegal as a matter of law," and

10

(2) Leviss's pleaded theories of liability "arise from private conduct" that occurred between Leviss, Sandoval, and Madix. For purposes of this appeal, we need not decide whether the conduct at issue was illegal as a matter of law. Even assuming that the conduct giving rise to Leviss's claims was not illegal as a matter of law, Madix failed to establish that the conduct constituted protected activity "in connection with a public issue or an issue of public interest" within the meaning of section 425.16, subdivision (e)(4).

The California Supreme Court has articulated a two-step inquiry for determining whether activity from which a lawsuit arises falls within section 425.16, subdivision (e)(4)'s protection. (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 148 (*FilmOn*).) First, the court asks what public issue or issue of public interest the challenged activity implicates. (*Ibid*.) Second, the court asks whether the challenged activity contributes to the public discussion of such issue. (*Id*. at pp. 149–150.) Thus, in seeking relief under section 425.16, "a defendant who claims its speech was protected as 'conduct in furtherance of the exercise of [free speech rights] in connection with a public issue or an issue of public interest' [citation] must show not only that its speech referred to an issue of public interest, but also that its speech contributed to public discussion or resolution of the issue." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 900; accord, *FilmOn*, at p. 150.)

In deciding what constitutes an issue of public interest, "courts look to certain specific considerations, such as whether the subject of the speech or activity 'was a person or entity in the public eye' or 'could affect large numbers of people beyond the direct participants' [citation]; and whether the activity 'occur[red]

11

in the context of an ongoing controversy, dispute or discussion' [citation], or 'affect[ed] a community in a manner similar to that of a governmental entity' [citation]." (*FilmOn, supra,* 7 Cal.5th at pp. 145–146.)  In determining whether the defendant's activity contributed to the public discussion of that issue, courts "examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." (*Id.* at p. 151.)  At both stages of this inquiry, courts also consider the context of the defendant's activity, including the identity of the speaker, the location and audience, and the purpose and timing of the speech or petitioning activity.  (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1252–1253.)

Here, the challenged activity that formed that basis of Leviss's claims against Madix was Madix's alleged conduct in accessing, copying, and disseminating sexually explicit videos of Leviss that Sandoval surreptitiously recorded on his cell phone. In support of her argument that the alleged conduct concerned a matter of public interest, Madix asserts that, at the time of these events, Leviss was "a public figure who had voluntarily placed her romantic entanglements, including her relationships with Sandoval and Madix, under the microscope of a reality television show."  Considering that Leviss chose to appear on a popular reality series that centered on its cast members' personal lives, Leviss's "romantic entanglements" may very well have been a topic of widespread public interest prior to the disclosure of her affair with her fellow cast member, Sandoval.  However, Leviss's status as a person in the public eye does not mean that every aspect of her personal life was itself a matter of public concern.

For instance, in defining the scope of Penal Code section 647, the criminal "revenge porn" statute, the Legislature

12

defined that the distribution of sexually explicit images "is not a matter of public concern or public interest solely because the depicted individual is a public figure." (*Id*., subd. (j)(4)(D)(iv), as amended by Stats. 2022, ch. 882, § 1.) As our Supreme Court also has recognized, "legitimate public interest does not include 'a morbid and sensational prying into private lives *for its own sake* … .' " (*Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 224; accord, *Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 874 ["morbid and sensational eavesdropping or gossip 'serves no legitimate public interest and is not deserving of protection' "].)

At issue here are video recordings of Leviss engaging in a private sexual act at a private residence during a private FaceTime call with Sandoval. In her complaint, Leviss alleged that she never consented to Sandoval recording these calls, she was not aware that he was doing so, and she never intended for their intimate communications to be seen by anyone else. While it appears both Leviss and Sandoval allowed Vanderpump Rules to film much of their personal lives as part of the reality show, there is no indication that the television cameras were rolling or that anyone else was present when Sandoval surreptitiously recorded Leviss engaging in a private sexual act. Madix nevertheless contends that Leviss's relationship with Sandoval was "already a source of widespread interest" at the time the videos were purportedly disseminated because, as alleged in Leviss's complaint, the affair was known to many cast members and suspected by others months before Madix found the videos on Sandoval's cell phone. But even if Leviss's affair with Sandoval was widely known at the time due to their status as public figures, any public interest in their affair would not extend to

13

private recordings depicting the most intimate aspects of the relationship.

On this issue, *Michaels v. Internet Entertainment Group, Inc.* (C.D.Cal. 1998) 5 F.Supp.2d 823 (*Michaels*) is instructive. In *Michaels*, celebrities Bret Michaels and Pamela Anderson Lee sought to enjoin the dissemination of a videotape that depicted the couple engaging in sexual intercourse. (*Id*. at p. 828.) The defendant in *Michaels*, a distributor of adult entertainment material, had acquired the videotape and intended to publish it. (*Ibid*.) In considering the merits of a claim for invasion of privacy brought by Michaels and Lee, the district court rejected the distributor's argument that Michaels's status as a "rock star" and Lee's status as a "sex symbol" made the video's sexual acts newsworthy and thus a matter of public concern. (*Id*. at p. 840.) As the court explained, "the private matter at issue here is not the fact that Lee and Michaels were romantically involved. Because they sought fame, Lee and Michaels must tolerate some public exposure of the fact of their involvement. [Citation.] The fact recorded on the [t]ape, however, is not that Lee and Michaels were romantically involved, but rather the visual and aural details of their sexual relations, facts which are ordinarily considered private even for celebrities." (*Ibid*.) As in *Michaels*, the fact that Leviss and Sandoval were romantically involved may have been an issue of legitimate public interest, but the secretly recorded videos of their sexual activity were not. Accordingly, Madix's alleged conduct in obtaining and distributing the videos was not done "in connection with a public issue or an issue of public interest" under section 425.16, subdivision (e)(4).

14

In arguing that she satisfied her burden under the first prong of the section 425.16 analysis, Madix asserts that the trial court erred in excluding certain evidence that further established that the claims alleged against her arose from protected activity. Madix contends that the trial court erroneously excluded "a Google search showing that Leviss was a public figure prior to 'Scandoval,' a video in which Leviss publicly discussed her sex life prior to 'Scandoval,' a post-'Scandoval' podcast interview with Leviss, videos and news articles about 'Scandoval,' and contemporaneous statements made by Madix and Leviss." However, even if we were to consider the excluded evidence in reviewing the trial court's ruling, it would not support a finding that the claims alleged arose from protected activity. At most, this evidence showed that Leviss was a public figure prior to Madix's purported dissemination of the sexually explicit videos, and that both before and after her affair with Sandoval became public, Leviss discussed various aspects of her personal life in the media. But the fact that Leviss is a public figure and has spoken publicly about her personal life, including her romantic relationships, does not make other highly intimate aspects of her life, such as an unauthorized sex video of Leviss, a matter of public interest. And while Leviss may have invited a certain level of public scrutiny into her personal life by voluntarily assuming fame as a reality television star, "even people who voluntarily enter the public sphere retain a privacy interest in the most intimate details of their lives." (*Michaels*, *supra*, 5 F.Supp.2d at p. 840.)

To be clear, we do not suggest that any statements Madix may have made about the videos could not be in furtherance of her free speech rights in connection with an issue of public

15

interest.  If the actions giving rise to any of Leviss's claims against Madix were Madix's public comments about the videos, including their sexual content, then that speech could fall within the scope of section 425.16, subdivision (e)(4).  However, at the first step of the section 425.16 analysis, we must "consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park*, *supra*, 2 Cal.5th at p. 1063.)  Based on the allegations in Leviss's complaint and based on the scope Madix gave her anti-SLAPP motion in the trial court, the actions that form the basis for Madix's purported liability and that we evaluate are not her statements about the videos, but her allegedly unauthorized acquisition and dissemination of the videos to Leviss and others.  Leviss viewed her complaint this way in her respondent's brief, asserting that the " 'wrong complained of' " in the pleaded causes of action "was not Madix's public speech but rather her theft and distribution of the [v]ideos."  Leviss's counsel made a similar point during oral argument.  When asked specifically if he was relying on any of Madix's statements about the videos to prove the pleaded causes of action, Leviss's counsel stated that he was not.  Madix, meanwhile, had told the trial court in her papers and at the hearing on her motion that she viewed Leviss's complaint as only including, and therefore could only be targeting, the theft and dissemination of the video.  When pressed by the trial court about what constituted the protected activity, discussion never came up.  And, for good reason then, the trial court did not view the anti-SLAPP motion as targeting claims based on discussions.

As the dissent points out, Leviss's counsel did indicate that Leviss would be seeking damages for the "public scorn and

16

ridicule" she faced because her counsel did not know how one could "separate out" those damages. However, to determine whether a plaintiff's claim arises out of protected activity under section 425.16, "we look to the allegedly wrongful and injurious conduct of the defendant, *rather than the damage which flows from said conduct.*" (*Renewable Resources Coalition, Inc. v. Pebble Mines Corp.* (2013) 218 Cal.App.4th 384, 396–397; accord, *Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 884.) Here, the allegedly wrongful and injurious conduct at issue in the anti-SLAPP motion was Madix's acquisition and dissemination of the videos, not the public scorn or ridicule that may have resulted from such dissemination.

Last, in concluding that Madix's alleged conduct does not constitute protected activity within the scope of section 425.16, subdivision (e)(4), we express no opinion about the veracity of the allegations in the complaint or the merits of the claims alleged, including whether the conduct on which Leviss is basing her claims is actionable. (See *Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 493 [courts "do not consider the veracity of respondents' allegations in determining whether their claims arise from protected speech or petitioning activity"]; *Miller v. Zurich American Ins. Co.* (2019) 41 Cal.App.5th 247, 256 [at the first step of the section 425.16 analysis, " 'the court does not consider whether the complaint alleges a cognizable wrong or whether the plaintiff can prove damages' "].) In particular, we express no opinion as to whether Leviss can prove that Madix distributed the videos to anyone other than Leviss, or whether Leviss can prevail on her causes of action if, as Madix asserts, Leviss was the only person to whom Madix sent or showed the videos. For purposes of this appeal, we solely hold that Leviss's

17

claims against Madix are not subject to a section 425.16 special motion to strike because Madix failed to satisfy her threshold burden of showing that the claims arose from constitutionally protected activity.  The trial court therefore did not err in denying the special motion to strike.

## DISPOSITION

The order denying Madix's special motion to strike is affirmed.  Leviss shall recover her costs on appeal.



VIRAMONTES, J.


I CONCUR:



SCHERB, J.


18

**Wiley, J., dissenting.**

Today's holding will astonish the enormous audience that followed #Scandoval.

Maybe you are not a fan of reality shows. Maybe you are like me: never heard of *Vanderpump Rules* or #Scandoval before this case.

You can get up to speed on these 15 minutes of popular culture by reading Aleksander, *How Tom Sandoval Became the Most Hated Man in America*, N.Y. Times Mag. (Feb. 20, 2004, updated Mar. 4, 2004) page 22. This article, which the parties discussed in oral argument and urged us to consult, recounts the saga of three mass-marketed screen characters on a reality show. Tom Sandoval was in a committed relationship with Ariana Madix, who was close friends with Rachel Leviss. Madix discovered Sandoval was having an affair with Leviss. The betrayal launched a brouhaha the audience dubbed #Scandoval.

When a massive public audience gives a public name to an issue, that issue is of public concern. We judges can write all we want, but this public voted with its eyeballs.

The infamous sex *tape* was not "public": just three people saw it. But the *discussion* about the scandal has been whoppingly public. Leviss's complaint is filled with how the public nature of that discussion harmed her. At oral argument, Leviss's counsel stated Leviss's claims for damages would include compensation for the public scorn and ridicule. Leviss's counsel said he did not know how one could "separate out" those damages from the bad effects stemming from the sex tape alone. Because nearly nobody saw the tape, this case is mainly about the public scorn and ridicule. Leviss hated her national bad press and sued

1

for redress.  That is public, because a sustained national public found the whole affair fascinating.  That is the goal of reality shows:  grip a colossal audience.  #Scandoval did.

Under *Baral v. Schnitt* (2016) 1 Cal.5th 376, then, we have mixed causes of action:  part private and part public.  I would remand for the trial court to sort through this mixture.  (See, e.g., *id*. at p. 396.)

The trial court denied Madix's motion on the grounds Madix broke the law by searching Sandoval's phone.  But Madix's declaration can be read to say Sandoval gave Madix blanket *consent* to look through his phone.  Under this reasonable interpretation, there was not enough to trigger the rule demanding "conclusive" proof.  (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 316, 317; see also *id*. at p. 318 ["indisputably illegal behavior"].)

WILEY, J.